Filed 3/4/15  P. v. Romero CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JUAN CARLOS ROMERO,<br><br>    Defendant and Appellant. | F067385<br><br>(Super. Ct. No. VCF242397)<br><br>**OPINION** |

-ooOoo-

## THE COURT*

APPEAL from a judgment of the Superior Court of Tulare County.  Patrick J. O'Hara, Gary L. Paden, and Brett R. Alldredge, Judges.

Gordon S. Brownell, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Cornell, Acting P.J., Kane, J. and Poochigian, J.

**INTRODUCTION**

A jury convicted appellant Juan Carlos Romero of forcible sodomy; the jury was unable to reach a verdict on a charge of rape and on special allegations alleged pursuant to Penal Code section 667.61.[1]  A mistrial was declared and the People announced their intent to retry Romero.  Romero was granted the right to represent himself at the retrial pursuant to *Faretta v. California* (1975) 422 U.S. 806.  While Romero was representing himself, the case was settled pursuant to a negotiated disposition.  Romero filed a notice of appeal and requested a certificate of probable cause, which was denied.  Appellate counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436.

**FACTUAL AND PROCEDURAL SUMMARY**

On September 23, 2010, a felony complaint was filed charging Romero with forcible sodomy (count 1), a violation of section 286, subdivision (c)(2), forcible rape (count 2), a violation of section 261, subdivision (a)(2), and alleging special enhancements as to both counts pursuant to section 667.61, subdivisions (a), (b), (d), and (e).  The complaint alleged the offenses were committed on or about June 12, 2001.  Romero pled not guilty and denied the special allegations.

On September 24, 2010, Romero filed a motion to withdraw his plea and demur to the complaint, alleging that the statute of limitations had expired.  Romero asserted the applicable statute of limitations was six years.  The People opposed the demurrer and asserted that section 801.1, subdivision (b) applied, which states:

> "Notwithstanding any other limitation of time described in this chapter, … prosecution for a felony offense described in subdivision (c) of Section 290 shall be commenced within 10 years after commission of the offense."

Section 290, subdivision (c) includes offenses committed pursuant to sections 261, subdivision (a)(2), and 286.  The trial court denied the motion.

---

[1]All further statutory references are to the Penal Code unless otherwise specified.

The preliminary hearing was held on October 15, 2010. The information was filed on October 26, 2010. Romero pled not guilty and denied all special allegations at the arraignment on the information.

On November 10, 2010, the public defender was relieved as counsel for Romero, at Romero's request; Romero had hired Attorney Michelle Winspur, who was substituted in as counsel. The trial date was vacated at defense counsel's request.

On January 18, 2011, Winspur filed a motion to set aside count 1 of the information (forcible sodomy), which the People opposed. The trial court denied the motion on February 22, 2011.

Winspur filed an application to retain an expert investigator at the county's expense. The motion was denied because counsel failed to attach the required Judicial Council form signed by Romero.

On July 5, 2011, a trial setting conference was held and trial was set to commence on September 19, 2011, at 9:00 a.m. The minute order notes that the trial court "will sanction defense attorney if fails to appear on time."

On August 12, 2011, Winspur was allowed to withdraw from the case because she was not being paid. The trial court reappointed the public defender's office to represent Romero.

On August 30, 2011, Romero withdrew his time waiver. At the trial setting conference on September 1, 2011, trial was set to commence on October 24, 2011. Subsequently, at the pretrial conference, Romero again entered a time waiver.

On November 29, 2011, defense counsel indicated a belief Romero might be incompetent to stand trial. The trial court suspended criminal proceedings, appointed a medical examiner, and ordered an evaluation pursuant to section 1368. On January 4, 2012, the trial court reinstated criminal proceedings after the appointed medical examiner found Romero competent; counsel stipulated to the competency findings.

3.

On January 25, 2012, a motion to dismiss the complaint was filed, alleging that Romero's due process rights had been violated because of unreasonable delay in prosecuting the offenses. The People opposed the motion to dismiss. Romero then filed a motion to continue the trial, which was granted. On February 21, 2012, Romero withdrew his time waiver.

The People thereafter filed a motion to continue the trial date. The People asked for a continuance because a critical witness, the sexual assault examination nurse, was scheduled for surgery and would be unavailable to testify on the scheduled trial dates. The trial court found good cause to grant the People's request, over Romero's objection.

Ultimately, after argument from both counsel, the trial court denied the motion to dismiss on March 16, 2012. On May 1, 2012, Romero again obtained private counsel.

Trial commenced on September 17, 2012, and jury selection began; Romero was represented by private counsel. On September 19 the trial court ruled on in limine motions. Presentation of evidence began on September 20.

Among the evidence presented at trial was the testimony of Diana Christie, the nurse who conducted the sexual assault examination. Christie testified that the examination is "fairly intrusive" and takes around three to four hours to complete. During the examination, Christie noted injuries to the victim's ear and neck, micro abrasions in her rectal area, scattered petechiae around the labia, and redness around the vaginal area. The injuries, abrasions, and redness were consistent with an attack as described by the victim. As part of the examination, Christie took vaginal and rectal swabs, took a vaginal wet mount slide, did a pubic hair combing, and collected the victim's clothing. All the swabs and collections were packaged and labeled and turned over to the police.

Scott Lewis, a senior criminalist with the California Department of Justice, tested the swabs and collections taken from the victim. Lewis found sperm cells in the vaginal and rectal swabs and male DNA. The male DNA that was found in the swabs was

consistent with Romero's DNA profile.  Based on the statistical probability of one in over a quintillion for the DNA markers to appear in the general population, Romero was identified as the likely source of the DNA.

Richard Kinney, a latent fingerprint analyst, matched Romero's fingerprints to fingerprints found on a beer can and hair gel container at the scene of the assault.

Patricia Lopez testified she previously had dated Romero and there had been violence in their relationship.

The victim testified.  She met Romero in 1998; they began living together about six months later and lived together for about a year and a half.  The victim ended the relationship and Romero moved out.

On March 25, 2001, the victim came home from a quinceañera party around 11:30 p.m.; she found Romero waiting for her.  When she opened the door to her apartment, he followed her inside.  Romero began tearing her dress, grabbed her by the hair, and repeatedly threw her against the wall.  The victim told Romero she was calling the police; he ran off after stating, "You will pay for this."

After the March 25 incident, the victim moved in with a female friend.  Romero showed up at that residence and, when the victim told him she did not want to see him, he became enraged and started choking her.

On June 12, 2001, the victim drove up to her residence about 8:10 a.m.; her roommate was at work.  The victim entered the residence through the front door.  After entering, she went to her bedroom, took off her shirt, grabbed a towel, and headed for the bathroom.  When she walked into the bathroom, Romero attacked her; he had been waiting behind the bathroom door.  Romero started choking her and told her that if she was not his, she "was no one else's."

Romero pulled the victim from the bathroom to the bedroom at the back of the house.  Romero threw the victim onto the bed and told her that if she "made a movement" she would die and that he had a gun.  Romero put a pillow over her face, removed her

5.

remaining clothes, and began having vaginal sex with her. After about five minutes, Romero turned her over and penetrated her rectally, repeating that he would kill her if she moved. Romero told her he was going to use some hair gel from a tube on the nightstand so it would not hurt. She never consented to having vaginal or anal sex with Romero.

The victim asked Romero not to kill her; she said she would agree to marry him if he would stop hurting her. The victim got dressed, Romero composed himself, and they walked outside to the victim's car. When Romero climbed into the car, the victim ran to a neighbor's house, banged on the neighbor's door, and called the police.

During portions of the fifth and sixth day of the jury trial, the trial court and counsel reviewed jury instructions outside the presence of the jury. The jury received instructions on the sixth day of trial, September 24, 2012, and commenced deliberations.

During deliberations the jury submitted several requests to have portions of testimony read to them. Eventually, the jury submitted a question asking what they should do if they were unable to reach a verdict on one count. The trial court responded that the jury should "deliberate so long as you feel further discussion and exchange will assist you in reaching a unanimous decision." Later, the jury submitted a note to the trial court stating they had a unanimous decision on one count but were unable to reach a unanimous verdict on the special allegations on the other count.

The jury returned a verdict of guilty on count 1, forcible sodomy. The trial court declared a mistrial on count 2 and all special allegations.

On October 3, 2012, the People indicated their intent to retry Romero on all special allegations and the count 2 offense. The matter was set for March 11, 2013, for a jury trial.

On November 30, 2012, defense counsel asked to be relieved as counsel because Romero's family, who had guaranteed his fees, had not paid him. The trial court granted the motion and again appointed the public defender to represent Romero.

A transcript of the trial was prepared at the trial court's expense and was provided to Romero. On February 7, 2013, Romero made a request pursuant to *Faretta* to represent himself at the retrial.

On February 19, 2013, the public defender indicated he had discussed with Romero a plea agreement offered by the People. The offer was for a total of eight years in prison on all counts. Romero did not want to accept the agreement, even though the offer would be withdrawn that day if not accepted. If accepted, the People's offer would have resulted in no additional prison time.

The trial court also addressed the *Faretta* motion on February 19, 2013. The trial court thoroughly discussed the implications of self-representation with Romero, strongly encouraged Romero to allow counsel to represent him, and ultimately granted the *Faretta* request. The trial court did require the public defender to serve as "stand-by counsel" for Romero.

On March 7, 2013, Romero indicated he wanted to accept a plea offer on the remaining count and special allegations. Romero had discussed the offer with the private counsel that previously had represented him, even though this counsel no longer was counsel of record. The offer was for Romero to plead no contest or guilty to the count 2 offense, in exchange for a sentence of eight years, to run concurrently with the count 1 sentence, and dismissal of the special allegations that potentially warranted a life sentence.

The plea agreement also included a waiver of any right to appeal the conviction on count 1 and the plea on count 2. The trial court thoroughly discussed with Romero the consequences of entering a plea, the constitutional rights he was waiving by entering a plea, and the waiver of appellate rights. Romero entered a plea of guilty to the count 2 offense and the trial court found the waivers and plea to be knowing, voluntary, and intelligent.

On April 10, 2013, the trial court sentenced Romero in accordance with the plea agreement. A term of eight years was imposed for the count 1 offense and a concurrent term of eight years for the count 2 offense.

Despite the waiver of appellate rights, on May 28, 2013, Romero filed a notice of appeal and requested a certificate of probable cause. The trial court denied the certificate of probable cause. In the request for a certificate of probable cause, Romero asserted he received ineffective assistance of counsel and that counsel, the prosecutor, and the judge discussed his case "behind doors instead of in front of the jury."

## DISCUSSION

On August 27, 2013, appellate counsel filed a request to augment the record on appeal. This court granted the request by order dated August 29, 2013. On January 14, 2014, appellate counsel filed a request with the Tulare County Superior Court seeking a correction in the award of local conduct credits and an amended abstract of judgment. On February 11, 2014, the request was granted and the trial court awarded four days of additional credit per Romero's request and directed the abstract of judgment be amended to reflect the change in credits.

On January 16, 2014, appellate counsel filed a *Wende* brief. In June and September 2014, this court received letters from Romero asking for a change in appellate attorneys because a *Wende* brief had been filed. On September 17, 2014, this court denied Romero's request for new appellate counsel.

After independent review of the record, and in light of the amended abstract of judgment awarding additional credits as requested by Romero, we have concluded there are no reasonably arguable legal or factual issues.

## DISPOSITION

The judgment is affirmed.

8.